John P. Kristensen (SBN 224132)
**KRISTENSEN LAW GROUP**
120 Santa Barbara Street, Suite C9
Santa Barbara, California 93101
Telephone: 805-837-2000
john@kristensen.law

Benjamin J. Eisner*
Texas Bar No. 24124680
service@eksm.com
**EKSM, LLP**
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**COUNSEL FOR PLAINTIFF AND THE PUTATIVE CLASS**
(* denotes *pro hac vice* forthcoming)

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| CLARA SHERMAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>MONTEREY MUSHROOMS, LLC<br><br>    Defendant. | ) Case No. 25-cv-8407<br>)<br>) **CLASS ACTION COMPLAINT FOR**<br>) **DAMAGES:**<br>)<br>)   1.  **Negligence;**<br>)   2.  **Breach of Implied Contract; and**<br>)   3.  **Unjust Enrichment.**<br>)<br>) **DEMAND FOR JURY TRIAL**<br>)<br>) |

## I.    INTRODUCTION

1.    Representative Plaintiff Clara Sherman ("Plaintiff") brings this class action against Defendant Monterey Mushrooms, LLC ("MM" or "Defendant") for its conduct leading to the recent data security incident and data breach that was perpetrated against Defendant (the "Data Breach").

2.    Defendant held in its possession certain personally identifiable information ("PII") of the Plaintiff and other current and former employees of Defendant, the putative class members ("Class"). This Data Breach occurred between August 2, 2025, and August 7, 2025.

3. Based on Defendant's report to the Attorney General of Texas, the Private Information for 2,311 Texans alone was impacted by the Data Breach.[1] The Private Information compromised in the Data Breach included certain names, Social Security numbers, driver's license and passport number.[2]

4. On September 18, 2025, Defendant mailed data breach notification letters to impacted individuals informing them of a cyberattack ("the Data Breach") and admits that the Private Information was impacted by the Data Breach.

5. Defendant is a mushroom farming corporation located in Watsonville, California.

6. Plaintiff is a former employee of Defendant who received a letter in the mail from Defendant informing her that her Private Information was impacted in the data breach.

7. Plaintiff brings this class action lawsuit on behalf of herself, and those similarly situated to address Defendant's inadequate safeguarding of Class Members' Personal Information that it collected and maintained, and for failing to provide adequate notice to Plaintiff and other Class Members that their information was likely accessed by an unknown third party and precisely what type of information was accessed.

8. Defendant maintained the Private Information in a reckless and negligent manner. In particular, the Private Information was maintained on Defendant's computer system and network in a condition vulnerable to cyberattack.

9. Upon information and belief, the mechanism of the Data Breach and potential for improper disclosure of Plaintiff's and Class Members' Personal Information was a known risk to Defendant and thus Defendant was on notice that failing to take steps necessary to secure the Personal Information from those risks left that information in a dangerous condition.

10. Because of the Data Breach, Plaintiff and Class Members suffered ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack and the substantial and

---

[1] Attorney General of Texas, *Data Security Breach Reports*, available at: https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage
[2] Exhibit A, *Data Breach Letter*, attached hereto.

imminent risk of identity theft.

11.    By obtaining, collecting, using, and profiting from the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. Defendant admits that the unencrypted Private Information was impacted during the Data Breach.

12.    The exposed Private Information of Plaintiff and Class Members can—and likely will—be sold on the dark web. Indeed, Plaintiff's, and Class Members' Private Information has likely already been published on the dark web.

13.    Hackers can offer for sale the unencrypted, unredacted Private Information to criminals. Plaintiff and Class Members now face a lifetime risk of identity theft, which is heightened here by the loss of Social Security numbers—the gold standard for identity thieves.

14.    This Private Information was compromised because of Defendant's negligent and/or careless acts and omissions and the failure to protect the Private Information of Plaintiff and Class Members.

15.    Plaintiff and Class Members had no idea their Private Information had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their lifetimes.

16.    Plaintiff brings this action on behalf of all persons whose Private Information was compromised because of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected Private Information using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

17.    Plaintiff and Class Members have suffered injuries because of Defendant's conduct. These injuries include:

      (i)    lost or diminished value of Private Information;

      (ii)    out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

(iii)  lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including, but not limited to, lost time; and

(iv)  the continued and exacerbated risk to their Private Information which:

a.  remains unencrypted and available for unauthorized third parties to access and abuse; and

b.  may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

18.   Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement adequate and reasonable measures to ensure that the Private Information of Plaintiff and Class Members was safeguarded. Defendant further disregarded their rights by failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures for the encryption of data, even for internal use.

19.   Because of the Data Breach, the Private Information of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II.   PARTIES

20.   Plaintiff Clara Sherman is a citizen of Madisonville, Texas. She received notice from Defendant that it lost control of her PII.

21.   Monterey Mushrooms, LLC is a for profit company with its principal place of business located in Watsonville, California.

22.   Defendant can be served through its registered agent Koy Saechao at 1505 Corporation which does business in California as CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Sacramento, CA.

## III.   JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

23.   Jurisdiction is proper in this Court under 28 U.S.C. § 1332 (diversity jurisdiction).

Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class and at least one other Class Member is a citizen of a state different from Defendant, including Plaintiff.

24.    Defendant is headquartered and routinely conducts business in the State where this District is located, has sufficient minimum contacts in this State and has intentionally availed itself of this jurisdiction by marketing and selling products and services, and by accepting and processing payments for those products and services within this State.

25.    Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiff's claims took place within this District, and Defendant does business in this Judicial District.

26.    Since the acts or omissions which give rise to Plaintiff's claims occurred in the County of Santa Cruz, Pursuant to Local Rule 3.2(c), this action must be assigned to the San Jose division of the Northern District Court.

## IV.    FACTUAL ALLEGATIONS

### The Data Breach

27.    In the ordinary course of providing employment Defendant obtained a variety of sensitive, personal and private information regarding its current and former employees, including Plaintiff and Class Members. Defendant promised to provide confidentiality and adequate security for the data it collected from its clients' employees.

28.    Defendant had obligations created by contract, industry standards, common law, and representations made to its employees and to Plaintiff and Class Members, to keep Class Members' Private Information confidential and to protect it from unauthorized access and disclosure. Defendant agreed to and undertook legal duties to maintain the protected Private Information entrusted to it by Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws. Defendant assumed legal and equitable duties and knew or should have known that it was responsible to protect Plaintiff's, and Class Members' Private Information from unauthorized disclosure.

29.     Additionally, as companies became more dependent on computer systems to run their business the danger posed by cybercriminals is magnified, thereby highlighting the need for adequate administrative, physical, and technical safeguards.[3] Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

30.     Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

31.     However, on September 18, 2025, Defendant mailed notice letters to Plaintiff and Class members, and the requisite state offices informing them of a data security incident that occurred between August 2, 2025, and August 7, 2025. In those letters, Defendant admits that it discovered that an unauthorized third party had gained access to its computer network and it had thus disclosed Plaintiff and Class Member Private Information data to that unauthorized third party.[4]

32.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

33.     Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for its intended purposes only, and to make only authorized disclosure of this Private Information.

34.     Plaintiff and Class Members directly or indirectly entrusted Defendant with sensitive and confidential information, including their Private Information, which includes Social Security numbers, information that is static, does not change, and can be used to commit myriad financial crimes.

35.     Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties.

36.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class Members, causing the

---

[3] https://www.picussecurity.com/key-threats-and-cyber-risks-facing-financial-service-and-banking-firms-in-2020.
[4] Exhibit A, *supra.*

exposure of Private Information.

37.    Because of Defendant's failure to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, an unauthorized third party infiltrated Defendant's systems and stole Plaintiff's, Plaintiff's Minor Child's, and Class Members' Private Information.

38.    The unencrypted PII of Plaintiff and Class Members will likely end up for sale on the dark web, as that is the *modus operandi* of hackers. In addition, unencrypted PII may fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiff and Class Members. In turn, unauthorized individuals can easily access the PII of Plaintiff and Class Members.

***Plaintiff's Experience***

39.    As a consequence of the unauthorized access to Defendant's computer network, Plaintiff's and Class Members' Private Information was exposed to cybercriminals. Plaintiff received a notice from Defendant on or around September 18, 2025, that her Private Information was accessed in the Data Breach claimed by ransomware gang Payoutsking.

40.    Plaintiff was an employee working with Defendant.

41.    Plaintiff is careful about sharing her Private Information and has never knowingly transmitted unencrypted sensitive Private Information over the internet or through any other unsecured source. Plaintiff stores documents containing sensitive Private Information in safe and secure locations or destroys the documents. Moreover, Plaintiff diligently chooses unique usernames and passwords for her sensitive online accounts.

42.    Plaintiff provided Defendant with certain Private Information as a necessary part of receiving employment from Defendant and, but for the Defendant's Data Breach, Plaintiff's personally identifiable information would not have been disclosed to cyber threat actors and would not be at risk of being exposed on the dark web.

43.    Plaintiff now bears the burden of dealing with the consequences of the Data Breach because Defendant advised Plaintiff that she needs to take certain steps to protect her Private Information and otherwise mitigate her damages. And since receiving Defendant's notice of the Data

Breach Plaintiff has and will continue spending time dealing with the consequences of the Data Breach. This includes time spent verifying the legitimacy of the Notice of Data Breach and self-monitoring her financial accounts, credit reports, and government services accounts to ensure no fraudulent activity has occurred.

44.    This time spent at Defendant's direction has been lost forever and cannot be recaptured.

45.    Further, even with the best response, the harm caused to Plaintiff cannot be undone because notorious cybercriminals have claimed to possess the data and have threatened to release the data, and Defendant has not yet been able to assure Plaintiff that the data possessed by the Payoutsking gang has been destroyed along with the threat of future release. As the Cybersecurity and Infrastructure Security Agency reports in its blog, *Protecting Against Ransomware*, "[e]ven after a ransom has been paid to unlock encrypted files, threat actors will sometimes demand additional payments…"[5]

46.    Plaintiff has suffered actual injury in the form of damages to and diminution in the value of their Private Information. Plaintiff suffered lost time, annoyance, interference, and inconvenience because of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

47.    Plaintiff has suffered imminent and impending injury arising from the exacerbated risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties who are criminals.

48.    Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Defendant Failed to Comply with FTC Guidelines***

49.    Defendant failed to properly implement basic data security practices.

50.    The Federal Trade Commission ("FTC") has promulgated many guides for businesses which show how important it is to implement reasonable data security practices. According to the

---

[5] CISA, *Protecting Against Ransomware*, Apr. 11, 2019 Rev. Sept. 2, 2011, https://www.cisa.gov/news-events/news/protecting-against-ransomware

1   FTC, the need for data security should shape all business decision-making.

2          51.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide*

3   *for Business*, which established cyber-security guidelines for businesses. The guidelines note that

4   businesses should protect the personal information that they keep; properly dispose of personal

5   information that is no longer needed; encrypt information stored on computer networks; understand

6   their network's vulnerabilities; and implement policies to correct any security problems.[6] The

7   guidelines also recommend that businesses use an intrusion detection system to expose a breach as

8   soon as it occurs; monitor incoming traffic for activity suggesting someone is attempting to hack the

9   system; watch for large amounts of data being transmitted from the system; and have a response plan

10  ready in the event of a breach.[7]

11         52.    The FTC further recommends that companies not maintain PII longer than is needed

12  for authorization of a transaction; limit access to sensitive data; require complex passwords to be used

13  on networks; use industry-tested methods for security; monitor for suspicious activity on the network;

14  and verify that third-party service providers have implemented reasonable security measures.

15         53.    The FTC has brought enforcement actions against businesses for failing to adequately

16  and reasonably protect client data, treating the failure to employ reasonable and appropriate measures

17  to protect against unauthorized access to confidential consumer data as an unfair act or practice

18  prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders

19  resulting from these actions also clarify the measures businesses must take to meet their data security

20  obligations.

21         54.     Defendant's failure to employ these or other reasonable and appropriate measures to

22  protect against unauthorized access to sensitive data including the Plaintiff's and Class Members' PII

23  constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

24         55.    Defendant was always fully aware of its obligation to protect the PII of its clients and

25  account holders. Defendant was also aware of the significant repercussions that would result from its

26

27  ───────────────

[6] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (2016), *available at*
www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited August

28  25, 2025).
[7] *Id.*

failure to do so.

***Defendant Failed to Comply with Industry Standards***

56.    The U.S. Food and Agriculture Sector is almost entirely privately owned and composed of an estimated 1.9 million farms, over 700,00 restaurants, and more than 220,000 registered facilities in food manufacturing, processing, and storage.[8] Agriculture, food and related industries represent 5.6% of U.S. gross domestic product and 10.4% of U.S. employment.[9]

57.    Entities in this industry often run operational technology and information technology systems that are vulnerable to cyber-attacks. To combat these vulnerabilities, CISA recommends business to implement to following to protect employees, vendors and customers from online threats:

   a.  Use strong passwords.

   b.  Turn on Multifactor Authentication (MFA).

   c.  Recognize and Report Phishing.

   d.  Update Software.

58.    Ransomware is a form of malware designed to encrypt files on a device, rendering any files and the systems that rely on them unusable. Malicious actors then demand ransom in exchange for decryption. Ransomware actors often target and threaten to sell or leak exfiltrated data or authentication information if the ransom is not paid. Ransomware incidents among the nation's critical infrastructure organizations, like Defendant, have been growing for years.

59.    Ransomware is commonly delivered through phishing emails or via "drive-by downloads" from employees visiting malicious sites and the download begins without the employee knowing.

60.    Industry organizations can protect themselves from ransomware attacks by following guidelines provided for by the Cybersecurity and Infrastructure Security Agency (CISA), the U.S. Secret Service, or the National Institute of Standards and Technology (NIST).

61.    CISA recommends entities take the following steps to protect from ransomware

---

[8] CISA.gov, Food and Agriculture Cybersecurity Checklist and Resources, https://www.cisa.gov/resources-tools/resources/food-and-agriculture-cybersecurity-checklist-and-resources
[9] *Id*.

infections:

    a.  Update and patch computers

    b.  Using caution with links and when entering website addresses.

    c.  Open email attachments with caution.

    d.  Keeping personal information safe by ensuring encryption.

    e.  Verifying email senders.

    f.  Keeping informed about recent cybersecurity threats and up to date on ransomware techniques.

    g.  Use and maintain preventative software programs.

62.    Several other best practices have been identified that at a minimum should be implemented by agriculture and food producers like Defendant, including, but not limited to, educating all employees; strong passwords; multi-layer security, including firewalls, antivirus, and antimalware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

63.    Other best cybersecurity practices that are standard in the agricultural sector include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

64.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

65.    These foregoing frameworks are existing and applicable industry standards in the financial services industry, and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

***Defendant's Breach of Duty***

66.     Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and its data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

> a.   Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;
>
> b.   Failing to adequately protect patients' Private Information;
>
> c.   Failing to properly monitor its own data security systems for existing intrusions;
>
> d.   Failing to ensure that vendors with access to Defendant's protected health data employed reasonable security procedures;
>
> e.   Failing to put into place proper procedures, software settings, and data security software protections to adequately protect against a blunt force intrusion;
>
> f.   Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act;
>
> g.   Failing to adhere to industry standards for cybersecurity; and
>
> h.   Failing to provide notice once the scope of the breach was determined.

67.     As the result of computer systems needing security upgrading, inadequate procedures for handling emails containing malignant computer code, and inadequately trained employees who shared their email credentials with cybercriminals, Defendant negligently and unlawfully failed to safeguard Plaintiff's, and Class Members' Private Information.

68.     Accordingly, as outlined below, Plaintiff and Class Members now face an increased risk of fraud and identity theft.

***The Risks to Plaintiff and Class Members Created by Defendant's Failure to Safeguard Private Information***

69.     Plaintiff and Class Members have suffered injury from the misuse of their PII that can be directly traced to Defendant.

70.    The ramifications of Defendant's failure to keep Plaintiff's and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal information such as that person's name, account number, Social Security number, driver's license number, date of birth, and/or other information, without permission, to commit fraud or other crimes. According to experts, one out of four data breach notification recipients become a victim of identity fraud.

71.    Because of Defendant's failures to prevent—and to timely detect—the Data Breach, Plaintiff, plaintiff's minor child, and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

    a.    The loss of the opportunity to control how their PII is used;

    b.    The diminution in value of their PII;

    c.    The compromise and continuing publication of their PII;

    d.    Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.    Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.    Delay in receipt of tax refund monies;

    g.    Unauthorized use of stolen PII; and

    h.    The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

72.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

73.    The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals often post stolen private

1   information openly and directly on various "dark web" internet websites, making the information

2   publicly available, for a substantial fee of course.

3          74.      It can take victims years to spot identity or PII theft, giving criminals plenty of time

4   to milk that information for cash.

5          75.      One such example of criminals using PII for profit is the development of "Fullz"

6   packages.

7          76.      Cyber-criminals can cross-reference two sources of PII to marry unregulated data

8   available elsewhere to criminally stolen data with an astonishingly complete scope and degree of

9   accuracy to assemble complete dossiers on individuals. These dossiers are known as "Fullz"

10  packages.

11         77.      The development of "Fullz" packages means that stolen PII from the Data Breach can

12  easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email

13  addresses, and other unregulated sources and identifiers. In other words, even if certain information

14  such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the

15  cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher

16  price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

17  That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable

18  for any trier of fact, including this Court or a jury, to find that Plaintiff's and other members of the

19  proposed Class's stolen PII is being misused, and that such misuse is traceable to the Data Breach.

20         78.      According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime

21  Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that

22  year, resulting in more than $3.5 billion in losses to individuals and business victims, and the numbers

23  are only rising.

24         79.      Further, according to the same report, "rapid reporting can help law enforcement stop

25  fraudulent transactions before a victim loses the money for good." Defendant did not rapidly report

26  to Plaintiff and the Class that their PII had been stolen.

27         80.      Victims of identity theft also often suffer embarrassment, blackmail, or harassment in

28  person or online, and/or experience financial losses resulting from fraudulently opened accounts or

1    misuse of existing accounts.

2      81.     In addition to out-of-pocket expenses that can exceed thousands of dollars and the

3 emotional toll identity theft can take, some victims must spend a considerable time repairing the

4 damage caused by the theft of their PII. Victims of new account identity theft will likely have to spend

5 time correcting fraudulent information in their credit reports and continuously monitor their reports

6 for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with

7 creditors.

8      82.     Further complicating the issues faced by victims of identity theft, data thieves may

9 wait years before attempting to use the stolen PII. To protect themselves, Plaintiff and the Class will

10 need to remain vigilant against unauthorized data use for years or even decades to come.

11      83.     The Federal Trade Commission ("FTC") has also recognized that consumer data is a

12 new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela

13 Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of

14 information collected by businesses, or why their information may be commercially valuable. Data is

15 currency."[10]

16      84.     The FTC has also issued Many guidelines for businesses that highlight the importance

17 of reasonable data security practices. The FTC has noted the need to factor data security into all

18 business decision-making. According to the FTC, data security requires:

19        (1) encrypting information stored on computer networks;

20        (2) retaining payment card information only as long as necessary;

21        (3) properly disposing of personal information that is no longer needed;

22        (4) limiting administrative access to business systems;

23        (5) using industry-tested and accepted methods for securing data;

24        (6) monitoring activity on networks to uncover unapproved activity;

25        (7) verifying that privacy and security features function properly;

26        (8) testing for common vulnerabilities; and

27 _____

28 [10] Statement of FTC Commissioner Pamela Jones Harbour-Remarks Before FTC Exploring Privacy Roundtable, (Dec. 7, 2009), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf_(last visited October 6, 2022).

1    (9) updating and patching third-party software.

2    85.    According to the FTC, unauthorized PII disclosures ravage consumers' finances, credit

3    history and reputation, and can take time, money and patience to resolve the fallout.[11] The FTC treats

4    the failure to employ reasonable and appropriate measures to protect against unauthorized access to

5    confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

6    86.    Defendant's failure to properly notify Plaintiff and Class Members of the Data Breach

7    exacerbated Plaintiff's, and Class Members' injury by depriving them of the earliest ability to take

8    appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused

9    by the Data Breach.

10    ***Plaintiff's and Class Members' Damages***

11    87.    To date, Defendant has done little to provide Plaintiff and Class Members with relief

12    for the damages they have suffered because of the Data Breach, including, but not limited to, the costs

13    and loss of time they incurred because of the Data Breach. Defendant has only offered up to 12 months

14    of inadequate identity monitoring services, despite Plaintiff and Class Members being at risk of

15    identity theft and fraud for the remainder of their lifetimes.

16    88.    The credit monitoring offered to persons whose Private Information was compromised

17    is wholly inadequate as it fails to provide for the fact that victims of data breaches and other

18    unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud.

19    What's more, Defendant places the burden on Plaintiff and Class Members by requiring them to

20    expend time signing up for that service rather than automatically enrolling all victims of this Data

21    Breach.

22    89.    Defendant's credit monitoring advice to Plaintiff and Class Members places the

23    burden on Plaintiff and Class Members, rather than on Defendant, to investigate and protect

24    themselves from Defendant's tortious acts resulting in the Data Breach.

25    90.    Plaintiff and Class Members have been damaged by the compromise of their Private

26

27

28    [11] *See* Taking Charge, What to Do If Your Identity is Stolen, FTC, at 3 (2012), *available at* https://www.ojp.gov/ncjrs/virtual-    library/abstracts/taking-charge-what-do-if-your-identity-stolen    (last visited August 25, 2025).

Information in the Data Breach, and by the severe disruption to their lives as a direct and foreseeable consequence of this Data Breach.

91.    Plaintiff's Private Information was compromised and exfiltrated by cyber-criminals as a direct and proximate result of the Data Breach.

92.    Plaintiff was damaged in that her Private Information is in the hands of cyber criminals.

93.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at an actual, present, immediate, and continuing increased risk of harm from fraud and identity theft.

94.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

95.    Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

96.    Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

97.    Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

98.    Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Many courts have recognized the propriety of loss of value damages in related cases.

99.    Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

100.    Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach

relating to:

    a.   Reviewing and monitoring financial and other sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

    b.   Purchasing credit monitoring and identity theft prevention;

    c.   Placing "freezes" and "alerts" with reporting agencies;

    d.   Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

    e.   Contacting financial institutions and closing or modifying financial accounts; and

    f.   Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

101.    Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by implementing security measures and safeguards, including, but not limited to, making sure that the storage of data or documents containing personal and financial information is inaccessible online and that access to such data is password protected.

102.    As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

## V.   CLASS ACTION ALLEGATIONS

103.    Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated pursuant to the Federal Rules of Civil Procedure Rule 23.

104.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

**All persons whose Private Information was compromised because of the August 2025 Data Breach (the "Class").**

105.    Excluded from the Class are Defendant's officers and directors, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and members of their staff.

106.    Plaintiff reserves the right to amend or modify the class definitions with greater specificity or division after having an opportunity to conduct discovery.

107.    <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them in a single proceeding is impracticable. The exact number of Class Members is unknown to Plaintiff now, but Defendant has reported to the OAG of Texas that the data breach impacted at least 2,311 people in Texas alone.

108.    <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

b.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.    Whether Defendant's data security systems prior to and during the Data Breach adhered to industry standards;

e.    Whether Defendant owed a duty to Class Members to safeguard their Private Information;

f.    Whether Defendant breached their duty to Class Members to safeguard their Private Information;

g.    Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h.  Whether Plaintiff and Class Members suffered legally cognizable damages from Defendant's misconduct;

i.  Whether Defendant's conduct was negligent;

j.  Whether Defendant's conduct was per se negligent;

k.  Whether Defendant's acts, inactions, and practices complained of herein amount to acts of intrusion upon seclusion under the law;

l.  Whether Defendant was unjustly enriched;

m.  Whether Defendant failed to provide notice of the Data Breach promptly; and

n.  Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

109.  <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, among other things, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and no defenses are unique to Plaintiff. Plaintiff's claims and those of Class Members arise from the same operative facts and are based on the same legal theories.

110.  <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

111.  <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all Plaintiff's and Class Members', and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any

1  individualized issues. Adjudication of these common issues in a single action has important and

2  desirable advantages of judicial economy.

3      112.  <u>Superiority</u>. A Class action is superior to other available methods for the fair and

4  efficient adjudication of the controversy. Class treatment of common questions of law and fact is

5  superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class

6  Members would likely find that the cost of litigating their individual claims is prohibitively high and

7  would therefore have no effective remedy.

8      113.  The prosecution of separate actions by individual Class Members would create a risk

9  of inconsistent or varying adjudications with respect to individual Class Members, which would

10 establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as

11 a class action presents far fewer management difficulties, conserves judicial resources and the parties'

12 resources, and protects the rights of each Class member.

13     114.  Defendant has acted on grounds that apply generally to the Class as a whole, so that

14 class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-

15 wide basis.

16     115.  Finally, all members of the proposed Class are readily ascertainable. Defendant has

17 access to Class Members' names and addresses affected by the Data Breach. Class Members have

18 already been preliminarily identified and sent notice of the Data Breach by Defendant.

19 **VI.    CAUSES OF ACTION**

20                **FIRST CAUSE OF ACTION**

21                    **Negligence**

22          **(On Behalf of Plaintiff and All Class Members)**

23     116.  Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

24     117.  Plaintiff and the Class entrusted Defendant with their Private Information.

25     118.  Plaintiff and the Class entrusted their Private Information to Defendant on the premise

26 and with the understanding that Defendant would safeguard their information, use their PII for

27 business purposes only, and/or not disclose their Private Information to unauthorized third parties.

28     119.  Defendant knows about the sensitivity of the Private Information and the types of harm

1  that Plaintiff and the Class could and would suffer if the Private Information were wrongfully

2  disclosed.

3      120.    Defendant knew or reasonably should have known that the failure to exercise due care

4  in the collecting, storing, and using of the Private Information of Plaintiff and the Class involved an

5  unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal

6  acts of a third party.

7      121.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and

8  protecting such information from being compromised, lost, stolen, misused, and/or disclosed to

9  unauthorized parties. This duty includes, among other things, designing, maintaining, and testing

10  Defendant's security protocols to ensure that the Private Information of Plaintiff and the Class

11  Members in Defendant's possession was adequately secured and protected.

12      122.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove

13  Private Information it was no longer required to retain under regulations.

14      123.    Defendant also had a duty to have procedures in place to detect and prevent the

15  improper access and misuse of the Private Information of Plaintiff and the Class.

16      124.    Defendant's duty to use reasonable security measures arose because of the special

17  relationship that existed between Defendant and Plaintiff and the Class. That special relationship

18  arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information,

19  a necessary part of obtaining services from Defendant.

20      125.    Defendant was subject to an "independent duty," untethered to any contract between

21  Defendant and Plaintiff or the Class.

22      126.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the

23  Class was reasonably foreseeable, particularly given Defendant's inadequate security practices.

24      127.    Plaintiff and the Class were the foreseeable and probable victims of any inadequate

25  security practices and procedures. Defendant knew or should have known of the inherent risks in

26  collecting and storing the Private Information of Plaintiff and the Class, the importance of providing

27  adequate security of that Private Information, and the necessity for encrypting Private Information

28  stored on Defendant's systems.

128.    Defendant's own conduct created a foreseeable risk of harm. to Plaintiff and the Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach asset forth herein. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the Private Information of Plaintiff and the Class, including basic encryption techniques freely available to Defendant.

129.    Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

130.    Defendant was able to protect against the harm suffered by Plaintiff and the Class because of the Data Breach.

131.    Defendant had and continue to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Info by third parties.

132.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the Private Information of Plaintiff and the Class.

133.    Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

134.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Private Information of Plaintiff and the Class during the time the Private Information was within Defendant's possession or control.

135.    Defendant improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

136.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the Private Information of Plaintiff and the Class in the face of increased risk of theft.

137.     Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of Private Information.

138.     Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove Private Information it was no longer required to retain under regulations.

139.     Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

140.     But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Nationwide Class, the Private Information of Plaintiff and the Class would not have been compromised.

141.     There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Nationwide Class. The Private Information of Plaintiff and Class Members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

142.     Additionally, Section 5 of the FTC Act prohibits "unfair ... practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

143.     Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as detailed herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

144.     Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

145.     Plaintiff and the Class are within the class of persons that the FTC Act was intended

to protect.

146.    The harm attributable to the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, because of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

147.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of Plaintiff and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the effect of the Private Information compromised because of the Data Breach for the rest of the lives of Plaintiff and the Class.

148.    As a direct and proximate result of Defendant' negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

149.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

150.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have a right to recover actual, consequential, and nominal damages.

### SECOND CAUSE OF ACTION

### BREACH OF IMPLIED CONTRACT

### (On Behalf of Plaintiff and All Class Members)

151.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

152.    When Plaintiff and Class Members provided their Private Information to Defendant in exchange for employment, they entered implied contracts with Defendant under which Defendant agreed to reasonably protect such information.

153.    Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

154.    In entering such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations, including the Federal Trade Commission Act, and adhered to industry standards.

155.    Plaintiff and Class Members provided labor to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

156.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

157.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that they adopted reasonable data security measures.

158.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

159.    Defendant breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

160.    As a direct and proximate result of Defendant's breach of the implied contracts, Class Members sustained damages as alleged here, including the loss of the benefit of the bargain.

161.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered because of the Data Breach.

162.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

## THIRD CAUSE OF ACTION

## UNJUST ENRICHMENT

## (On Behalf of Plaintiff and All Class Members)

163.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

164.    Plaintiff brings this claim individually and on behalf of all Class Members. This count is pled in the alternative to the breach of contract count above.

165.    Upon information and belief, Defendant funds its data security measures entirely from its general revenue.

166.    As such, a portion of the revenue attributable to Plaintiff's and Class Members' labor is to be used to provide a reasonable level of data security.

167.    Plaintiff and Class Members conferred a monetary benefit on Defendant. They staffed Defendant's business and provided labor to Defendant and/or its agents and in so doing provided Defendant with their Private Information. In exchange, Plaintiff and Class Members should have received from Defendant the wages and goods that were the subject of the transaction and appropriate protection for their Private Information.

168.    Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

169.    Defendant enriched itself by saving the costs Defendant reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information.

1  Rather than providing a reasonable level of security that would have prevented the hacking incident,

2  Defendant instead calculated to increase its own profits at the expense of Plaintiff and Class Members

3  by using cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand,

4  suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the

5  requisite security.

6      170.    Under the principles of equity and good conscience, Defendant should not be

7  permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to

8  implement appropriate data management and security measures that are mandated by industry

9  standards.

10     171.    Defendant failed to secure Plaintiff's and Class Members' Private Information and

11  thus did not provide full compensation for the benefit Plaintiff and Class Members provided.

12     172.    Defendant acquired the Private Information through inequitable means in that they

13  failed to disclose the inadequate security practices alleged.

14     173.    If Plaintiff and Class Members knew that Defendant had not reasonably secured their

15  Private Information, they would not have agreed to provide their Private Information to Defendant.

16     174.    Defendant benefitted from collecting and using Plaintiff's and Class Members'

17  sensitive Private Information for business purposes such as evaluating job applications, conducting

18  background checks, and verifying employment eligibility. Yet Defendant failed to bear the costs of

19  safeguarding that same information, instead shifting the risk of harm to the individuals who entrusted

20  their PII.

21     175.    Plaintiff and Class Members conferred a direct and valuable benefit on Defendant by

22  providing their sensitive PII, which Defendant accepted and used in the operation of its business.

23  Because Defendant failed to provide reasonable data protections in exchange, equity and good

24  conscience dictate that Defendant should not be allowed to retain the benefit without providing

25  adequate safeguards.

26     176.    Plaintiff and Class Members gave Defendant their sensitive personal data, a valuable

27  asset in its own right, which Defendant used to further its business operations while cutting costs on

28  security. Defendant's retention of this benefit without adequate protection is inequitable.

177.    Plaintiff and Class Members have no adequate remedy at law.

178.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to:

a.  actual identity theft;

b.  the loss of the opportunity of how their Private Information is used;

c.  the compromise, publication, and/or theft of their Private Information;

d.  out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information;

e.  lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft;

f.  the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and

g.  future costs in terms of time, effort, and money to be expended to prevent, detect, contest, and repair the effect of the Private Information compromised because of the Data Breach for the rest of the lives of Plaintiff and Class Members.

179.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

180.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class described above seeks the following relief against Defendant, as follows:

a.    For an Order certifying this action as a class action, defining the Class as requested herein, appointing Plaintiff and her counsel to represent the Class, and finding that Plaintiff is a proper representatives of the Class requested herein;

b.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein relating to the misuse and/or disclosure of Plaintiff's, and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

c.    For equitable relief compelling Defendant to use appropriate methods and policies related to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

d.    For an Order directing Defendant to pay for not less than ten years of credit monitoring services for Plaintiff and the Class;

e.    For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

f.    For an award of punitive damages, as allowable by law;

g.    For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

h.    Pre- and post-judgment interest on any amounts awarded; and

i.    Any other relief that this court may deem just and proper.

Dated:  October 2, 2025

**KRISTENSEN LAW GROUP & EKSM, LLP**

*/s/ John P. Kristensen*

John P. Kristensen
Benjamin J. Eisner *
Pro Hac Forthcoming
***Counsel for Plaintiff***

1

## **DEMAND FOR JURY TRIAL**

2    Plaintiff hereby demands a jury trial as to the entire action and all Claims for relief.

3    Dated:   October 2, 2025                                                **KRISTENSEN LAW GROUP &**
                                                                                                 **EKSM, LLP**
4

5                                                                                    */s/ John P. Kristensen*

6                                                                                    John P. Kristensen
                                                                                            Benjamin J. Eisner *
7                                                                                    Pro Hac Forthcoming
                                                                                            ***Counsel for Plaintiff***
8

9

10

11



12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A



**MONTEREY**
MUSHROOMS

Secure Processing Center
P.O. Box 680
Central Islip, NY 11722-0680

*******AUTO**SCH 5-DIGIT 77840
Clara M. Sherman

P-2
T-8

September 18, 2025

Dear Clara M. Sherman:

Monterey Mushrooms, LLC recognizes the importance of protecting the information we maintain. We are writing to inform you that we recently identified and addressed an incident involving unauthorized access to our computer network. This notice explains the incident, the measures we have taken in response, and some additional steps you may consider taking.

### What Happened?
Upon discovering this incident, we took measures to secure our IT network, launched an investigation, and contacted law enforcement. The investigation determined that an unauthorized actor accessed files on our computer servers between August 2, 2025 and August 7, 2025.

### What Information Was Involved?
We reviewed the files involved in this incident and, on August 30, 2025, we determined that they may have contained your name, Social Security number, and in certain limited circumstances, your driver's license number and/or passport number.

### What We Are Doing.
We encourage you to remain vigilant by regularly reviewing your credit report for unauthorized activity. If you see activity you did not authorize, please contact your financial institution immediately. We have secured the services of Epiq to offer you a complimentary one-year membership in Privacy Solutions ID. This product helps detect possible misuse of your information and provides you with identity protection support focused on immediate identification and resolution of identity theft. Privacy Solutions ID is completely free and enrolling in this program will not hurt your credit score.

### What You Can Do.
For more information on Privacy Solutions ID including instructions on how to activate your complimentary membership, as well as some additional steps you can take to protect your information, please see the pages that follow this letter.

### For More Information.
We regret any inconvenience that this may cause. To help prevent a similar incident from occurring in the future, we have implemented additional measures to enhance the security of our IT network. If you have any questions, please call 1-877-396-3274, Monday through Friday, between 9:00 a.m. and 9:00 p.m. Eastern Time.

Sincerely,

Monterey Mushrooms, LLC